ARMANDO ROMERO ARROYO, ETC., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, ETC., demandados y recurridos.

*Número:* RE-87-101          *Resuelto:* 24 de enero de 1991

*Víctor A. Vélez Cardona,* abogado de los recurrentes; *Rafael Ortiz Carrión, Procurador General,* y *Anabelle Rodríguez, Procuradora General Auxiliar,* abogados de El Pueblo; *José A. Ortiz Pérez,* de *Servicios Legales de Puerto Rico,* abogado de Blanca I. Rivera Rodríguez, recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso —el cual tiene un trasfondo fáctico un tanto novelesco— plantea fundamentales e importantes interrogantes; en especial, respecto a la responsabilidad del Estado Libre Asociado de Puerto Rico por los daños y perjuicios sufridos por unos ciudadanos, consecuencia los mismos de alegados actos, y omisiones, negligentes en que supuestamente incurrieron el Secretario del Departamento de Justicia de Puerto Rico y los Fiscales adscritos al referido departamento en el descargo de su función de investigación de posible conducta delictiva en nuestro País.

## I

La Sra. Blanca Iris Rivera Rodríguez acudió el día 22 de octubre de 1985 a la oficina del Fiscal del Distrito de Utuado en relación con una investigación que había ordenado realizar el Secretario de Justicia de Puerto Rico, Lcdo. Héctor Rivera Cruz, referente la misma a una "carta querella" que la señora Rivera Rodríguez le había enviado a dicho funcionario. En dicha carta la referida dama alegaba que el Sr. Armando Romero Arroyo y su esposa Virginia Martínez Deliz le habían "secuestrado", aproximadamente un (1) año antes, un hijo de tierna edad, trasladándose éstos con el niño al estado de Nueva Jersey, Estados Unidos de América.

La señora Rivera Rodríguez fue atendida en la Fiscalía por el Fiscal Francisco Acevedo Padilla, quien procedió a reducir a escrito la versión de la querellante. Conforme surge de la declaración jurada prestada, la señora Rivera Rodríguez, mujer soltera de treinta y siete (37) años de edad y residente del pueblo de Lares, quedó embarazada como consecuencia de unas relaciones amorosas que ella sostuviera con un amigo de nombre Bautista Rodríguez Avilés. Siendo soltera y temiendo la reacción negativa de su abuela, familiar con quien residía, la señora Rivera Rodríguez "simuló" su embarazo mediante el uso de determinados subterfugios. Luego del alumbramiento, la señora Rivera Rodríguez *entregó voluntariamente* el recién nacido *a su tía*

Virginia Martínez Deliz y al esposo de ésta, Armando Romero Arroyo. El menor, bajo circunstancias que no surgen con claridad de la declaración jurada de la señora Rivera Rodríguez, fue inscrito en el Registro Demográfico como hijo de Blanca Iris Rivera Rodríguez y Armando Romero Arroyo.

Conforme surge de la referida declaración jurada, luego de varios meses de tener consigo al menor de edad, los esposos Romero Martínez se trasladaron junto a éste al estado de Nueva Jersey alegadamente sin el consentimiento de la querellante Rivera Rodríguez. No surge de la referida declaración jurada la razón, si alguna, para la "tardanza" de aproximadamente un (1) año en que incurrió la señora Rivera Rodríguez en reportar a las autoridades pertinentes el alegado secuestro..

Procede que se señale el hecho de que el Fiscal Acevedo Padilla, en adición, obtuvo una declaración jurada del Sr. Bautista Rodríguez Avilés respecto a estos hechos.(1) En la misma, el referido ciudadano admitió las relaciones con la querellante Rivera Rodríguez; admitió la posibilidad de que él fuera el padre de la criatura e informó haber visto al referido menor en la residencia de los esposos Romero Martínez en el estado de Nueva Jersey, en ocasión de él haber estado visitando en dicho estado a otros hijos suyos.

El día 22 de octubre de 1985, en horas de la tarde, el Estado sometió el caso para la determinación de causa probable para arresto ante el Tribunal Superior de Puerto Rico, Sala de Utuado, *sin que se realizara investigación adicional alguna*; esto es, sin que el Fiscal entrevistara ninguna otra persona.(2) Dicho foro judicial determinó causa probable contra los esposos Romero Martínez por infracción al Art. 160 del Código Penal de Puerto

---

(1)  Dicha declaración jurada, según surge de la misma, fue autorizada el día 18 de octubre de 1985; esto es, cuatro (4) días antes de que prestara la suya la señora Rivera Rodríguez.

(2)  De la declaración jurada de la querellante Rivera Rodríguez surge que la misma fue prestada *a las* 11:25 *A.M.* del día 22 de octubre de 1985. El caso fue "sometido" ante la consideración de un magistrado para la determinación de causa probable para arresto *ese mismo día* 22 de octubre de 1985 *a las 2:00 P.M.*

Rico, 33 L.P.R.A. sec. 4243,([3]) y por infracción al Art. 42 de la Ley del Registro Demográfico de Puerto Rico, 24 L.P.R.A. sec. 1301.([4])

Encontrándose residiendo los imputados de delito en el estado de Nueva Jersey, éstos fueron arrestados allí por funcionarios de dicho estado conforme requerimiento a esos efectos del Gobierno de Puerto Rico. Los esposos Romero Martínez fueron traídos a Puerto Rico como consecuencia de un procedimiento de extradición que instara en el estado de Nueva Jersey el Estado Libre Asociado de Puerto Rico, procedimiento en que personalmente intervino el Fiscal Acevedo Padilla de la Fiscalía de Utuado. Toda esta situación fue objeto de una conferencia de prensa por parte del Secretario de Justicia, Lcdo. Héctor Rivera Cruz. En la misma —según ello surge de la edición del periódico *El Vocero de Puerto Rico* correspondiente al día 13 de diciembre de 1985— el mencionado Secretario expresó que la investigación que culminó en el arresto y extradición de los esposos Romero Martínez fue expresamente ordenada por él como consecuencia de una carta que él recibió de la señora Rivera Rodríguez, investigación que se realizó con carácter prioritario ya que el Secretario "interesaba que la querellante estuviera junto a su hijo durante la época navideña". El matrimonio Romero Martínez, luego de arribar a Puerto Rico bajo custodia policíaca, fue ingresado en prisión al no poder prestar ninguno de ellos la fianza fijádale.

Celebrada la vista preliminar que establece la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el magistrado del Tribunal de Distrito que presidió la misma determinó *inexisten-*

---

([3]) Establece el Art. 160 del vigente Código Penal, 33 L.P.R.A. sec. 4243, que:

"Toda persona que maliciosa, violenta o fraudulentamente sustrajere a un niño menor de doce años con el propósito de retener y ocultarlo de sus padres, tutor u otra persona legalmente encargada de dicho menor, *será sancionada con pena de reclusión por un término fijo de veinticuatro (24) años.* De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cuarenta (40) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un máximo de dieciséis (16) años." (Énfasis suplido.)

([4]) Conforme la denuncia radicada, se le imputó a los esposos Romero Martínez haber suministrado —de manera ilegal, voluntaria y criminalmente— "información falsa para conseguir una inscripción fraudulenta en o para hacer aparecer en dicha inscripción hechos falsos a sabiendas de la falsedad de lo allí informado", lo cual constituye una infracción al citado Art. 42 de la Ley del Registro Demográfico de Puerto Rico, 24 L.P.R.A. sec. 1301.

*cia* de causa probable para proceder criminalmente contra los esposos Romero Martínez por los delitos imputados. Inconforme, el Estado acudió "en alzada" ante la Sala de Utuado del Tribunal Superior. Dicho foro ratificó la *inexistencia* de causa probable para acusar a la Sra. Virginia Martínez. En cuanto al Sr. Armando Romero, aun cuando el referido tribunal determinó inexistencia de causa probable para acusarlo por el delito de secuestro (Art. 160 del Código Penal, *supra*), determinó causa probable por violación al Art. 42 de la Ley del Registro Demográfico de Puerto Rico, *supra*. El señor Romero fue posteriormente *exonerado* de dicho delito luego de la celebración de un juicio plenario.

Con motivo de los hechos antes relatados, el Sr. Armando Romero Arroyo y su esposa Virginia Martínez Deliz radicaron ante el Tribunal Superior de Puerto Rico, Sala de Utuado, una demanda civil sobre "arresto ilegal y daños y perjuicios" contra el Estado Libre Asociado de Puerto Rico, el Secretario de Justicia de Puerto Rico y la Sra. Blanca I. Rivera. Resulta pertinente enfatizar el hecho de que en el párrafo núm. 2 de la referida demanda se alega que:

> 2. . . . la información que le dio doña Blanca I. Rivera al Sr. Secretario de Justicia de Puerto Rico era totalmente falsa *y el Departamento de Justicia debió haberla corroborado para evitar, como no se evitó, que se arrestaran injustamente a los demandantes.* (Énfasis suplido.) Apéndice: *Exhibit* VII, pág. 7.

El codemandado Estado Libre Asociado de Puerto Rico prontamente radicó una moción de desestimación. En la misma alegó, en síntesis, que procedía la desestimación de la acción radicada por razón de: (1) prescripción de la acción; (2) la inmunidad del Estado por falta de negligencia, y (3) la falta de notificación al Secretario de Justicia, según lo dispone el Art. 2A de la Ley de Pleitos, 32 L.P.R.A. sec. 3077a.

El tribunal de instancia, mediante sentencia parcial a esos efectos, desestimó la acción radicada en cuanto al codemandado Estado Libre Asociado de Puerto Rico, ordenando "la continuación del litigio en relación a las demás partes del caso". Apéndice, *Exhibit* IX, pág. 19. Dicho foro, no obstante rechazar las conten-

ciones del codemandado Estado Libre Asociado respecto a la alegada prescripción de la acción y a la inmunidad del Estado por falta de negligencia,[5] entendió que ante el incumplimiento de la parte demandante con el requisito de notificación exigido por el antes citado Art. 2A de la Ley de Pleitos efectivamente procedía la desestimación del pleito en cuanto al E.L.A.

Inconforme, la parte demandante acudió en revisión ante este Tribunal. En el recurso que a esos efectos radicara le imputó al tribunal de instancia haber errado

> . . . al resolver que en este caso la notificación al Secretario de Justicia no se hizo dentro de los 90 días desde que el demandante tuvo conocimiento del daño que reclama *y que el hecho de que el Estado fuese el promotor de tal acción no lo releva o exime de tal requisito.* (Énfasis suplido.) Solicitud de revisión, pág. 4.

Expedimos el auto de revisión radicado. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## II

En el presente caso, la parte demandante no realizó la notificación que exige el citado Art. 2A de la Ley de Pleitos. De hecho, la primera notificación que tuvo el Estado sobre dicho pleito lo fue la demanda que se radicara. Aduce la parte demandante que, *dados los hechos particulares del caso y el propósito específico que tuvo el legislador al aprobar dicha disposición de ley,* debemos "eximirla" del cumplimiento del referido requisito de notificación.

---

(5) En cuanto a la alegación del Estado Libre Asociado de que la acción radicada estaba prescrita, el tribunal de instancia resolvió —citando a *Colón Prieto v. Géigel,* 115 D.P.R. 232 (1984)— que la causa de acción de los demandantes no estaba prescrita por cuanto a la fecha de la radicación de la demanda no había transcurrido el período de un año que establece el Art. 1868 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5298, desde que los demandantes "conocieron" el daño; esto es, desde el día en que fueron arrestados en Nueva Jersey.

Rechazó, por otro lado, la alegación de que el Estado gozaba de inmunidad en el presente caso —fundada la misma en las disposiciones del Art. 6(d) de la Ley Núm. 104 de 1955 (32 L.P.R.A. sec. 3081(d))— aduciendo que ello debía ser resuelto, conforme jurisprudencia de este Tribunal, en un juicio plenario. A esos efectos citó las decisiones emitidas en *Alberio Quiñones v. E.L.A.,* 90 D.P.R. 812 (1964), y en *Galarza Soto v. E.L.A.,* 109 D.P.R. 179 (1979).

El citado Art. 2A de la Ley de Pleitos establece que:

*Sec. 3077a.—Notificaciones*

(a) Toda persona que tenga reclamaciones de cualquier clase contra el Estado Libre Asociado de Puerto Rico, por daños a la persona o a la propiedad, causados por culpa o negligencia de dicho Estado, *deberá presentar al Secretario de Justicia una notificación escrita haciendo constar, en forma clara y concisa,* la fecha, sitio, causa y naturaleza general del daño sufrido, los nombres y direcciones de sus testigos, y la dirección del reclamante, así como el sitio donde recibió tratamiento médico en primera instancia.

(b) Dicha notificación se entregará al Secretario de Justicia remitiéndola por correo certificado, o por diligenciamiento personal, o en cualquier otra forma fehaciente reconocida en derecho.

(c) La referida notificación escrita se presentará al Secretario de Justicia *dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama.* Si el reclamante estuviere mental o físicamente imposibilitado para hacer dicha notificación dentro del término prescrito, no quedará sujeto a la limitación anteriormente dispuesta, viniendo obligado a hacer la referida notificación dentro de los treinta (30) días siguientes a la fecha en que cese la incapacidad.

(d) Si el perjudicado fuere un menor de edad, o fuere persona sujeta a tutela, la persona que ejerza la patria potestad o la custodia del menor, o el tutor, según fuere el caso, vendrá obligado a notificar la reclamación dentro de los noventa (90) días siguientes a la fecha en que tuvo conocimiento de los daños que reclama. Lo anterior no será obstáculo para que el menor, o la persona sujeta a tutela, haga la referida notificación, dentro del término prescrito, a su propia iniciativa, si quien ejerce la patria potestad o custodia, o tutela, no lo hiciere.

(e) *No podrá iniciarse acción judicial de clase alguna contra el Estado Libre Asociado de Puerto Rico por daños*

causados por la culpa o negligencia de aquél, *si no se hubiese efectuado la notificación escrita en la forma y manera y dentro de los plazos prescritos en esta sección, a menos que no haya mediado justa causa para ello.* Esta disposición no será aplicable a los casos en que la responsabilidad del Estado esté cubierta por una póliza de seguro.

(f) Esta sección no modificará en forma alguna, para aquellos reclamantes que cumplan con sus disposiciones, el término prescriptivo fijado por el inciso (2) de la sec. 5298 del Título 31. (Énfasis suplido.)

■ El propósito, o intención, del legislador al aprobar el transcrito precepto legal resulta ser obvio. Como expresáramos en *Rivera de Vincenti v. E.L.A.*, 108 D.P.R. 64, 69 (1978), el mismo "tiene el propósito *de poner sobre aviso al Gobierno* de que ha surgido una probable causa de acción por daños en su contra *de modo que pueda activar sus recursos de investigación prontamente,* antes que desaparezcan los testigos y las pruebas objetivas en orden a la preparación de una adecuada defensa contra la reclamación o una transacción adecuada de la misma, cuando proceda". (Énfasis suplido.) Dicha interpretación judicial no es una caprichosa y carente de base. La misma está fundada en el historial legislativo del precepto legal ante nuestra consideración:

El propósito de la medida es el de fijar un término durante el cual deberán notificarse las reclamaciones de cualquier clase contra el Estado Libre Asociado de Puerto Rico por daños a la persona o la propiedad causados por culpa o negligencia del Estado, siguiendo el principio de la previa notificación ya establecido en cuanto a acciones de igual naturaleza contra los municipios en virtud del Artículo 96 de la Ley Núm. 142 de 21 de julio de 1960, que establece un sistema de gobierno local para los municipios de Puerto Rico.

El término para radicar acciones de este tipo es de un año a partir de la fecha en que ha ocurrido el alegado daño. *En muchos casos y por diversas razones, las acciones se radican cuando ya está para finalizar el término y ocurre que el Estado, por el tiempo transcurrido desde que ocurrieron los alegados daños, se encuentra con problemas de falta de información o información deficiente en*

*cuanto a los hechos y a[u]n con la circunstancia de la reorganiza-*
*ción de una agencia o dependencia como resultado de lo cual se*
*han extraviado los récords que hacen referencia al accidente u*
*origen de los daños, así como con el movimiento de testigos*
*presenciales, cuyo paradero se ignora al momento en que se*
*notifica de la acción, todo ello en perjuicio de la oportunidad*
*amplia que debe tener el Estado para hacer las alegaciones*
*correspondientes y establecer las defensas en estos casos.* (Énfasis
suplido.) 20 Diario de Sesiones de la Asamblea Legislativa (Cámara)
T. 2, págs. 845–846 (1966).

■ Debido precisamente a ello es que nos hemos negado en
el pasado a sostener la *aplicación indiscriminada* del requisito
de la notificación. A esos efectos, en *Loperena Irizarry v. E.L.A.*,
106 D.P.R. 357, 359–360 (1977), resolvimos que

[n]uestra jurisprudencia ha sido constante en sostener que la
notificación previa al Estado en reclamaciones por daños y perjui-
cios originados en negligencia exigida por [la] Ley Núm. 121 de 24
de junio de 1966 (32 L.P.R.A. sec. 3077a), *si bien es requisito de*
*cumplimiento estricto, no alcanza calidad de condición precedente*
*jurisdiccional.* . . . Esta calificación libera al tribunal de un auto-
matismo dictado por el calendario *y salva su fundamental facultad*
*para conocer del caso y proveer justicia según lo ameriten las*
*circunstancias.* También hace de dicho requisito *uno renunciable*
*por el Estado en los casos que considere apropiados* y con la
flexibilidad y opción que toda parte demandada tiene para suscitar
o renunciar una defensa . . . . (Énfasis suplido.)

■ En *Meléndez Gutiérrez v. E.L.A.*, 113 D.P.R. 811 (1983),
nos enfrentamos a una situación en que el Estado alegaba no
haber sido notificado, conforme exige el citado Art. 2A, por un
demandante que reclamaba daños y perjuicios, por "mala práctica
de la medicina", sufridos mientras estuvo recluido en una institu-
ción hospitalaria del Estado. En el referido caso de *Meléndez*
*Gutiérrez v. E.L.A., supra*, pág. 815, al nuevamente evitar caer en
la aplicación automática de un requisito que resulta ser innecesa-
rio en ciertas y determinadas situaciones de hechos, concluimos:

. . . en casos como en el presente —*donde el riesgo de que la*
*prueba objetiva pueda desaparecer es mínimo, donde hay constan-*

*cia efectiva de la identidad de los testigos y donde el Estado, por tanto, puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique*— no es de aplicación inexorable la citada Sec. 3077a *por cuanto el objetivo que se persigue mediante la aplicación de la referida disposición legal no tiene razón de ser.* (Énfasis suplido.)

Igual conclusión y solución se impone en el presente caso; *en éste aun con mayor razón.* La demanda de daños y perjuicios radicada en el caso que ocupa nuestra atención versa sobre una situación de hechos que sucede precisamente como consecuencia de una actuación del funcionario de gobierno a quien, conforme dispone el citado Art. 2A, se supone los demandantes tenían que notificar, esto es, al Secretario de Justicia de Puerto Rico. *De hecho, quien mejor y más completo conocimiento tiene de lo sucedido lo es el propio codemandado Estado Libre Asociado de Puerto Rico a través de su Departamento de Justicia.* Si hay algún caso "apropiado" en que —acorde expresáramos en *Loperena Irizarry v. E.L.A.*, supra, y conforme el principio de "buena fe" que debe permear la litigación en nuestra jurisdicción— el Estado debió de haber renunciado al planteamiento de esta "defensa" lo es el presente caso.

### III

El Procurador General, en el alegato que radicara en el presente caso en representación del Estado Libre Asociado, *insiste* en que, independientemente del punto de la falta de notificación, "lo cierto es que la demanda instada en el caso de autos no expone una reclamación que justifique la concesión de un remedio". Alegato del Procurador General, pág. 7. En apoyo de esa posición, el Procurador General llama nuestra atención hacia lo dispuesto por el Art. 6(d) de la Ley de Pleitos, *supra*, 32 L.P.R.A. sec. 3081(d), la cual establece, en lo pertinente, que nada de lo dispuesto en dicha ley

. . . autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:

. . . . . . . .

> (d) constitutivo de acometimiento, agresión u otro delito contra la persona, *encarcelación ilegal, arresto ilegal,* persecución maliciosa, calumnia . . . . (Énfasis suplido.)

Al respecto, el Procurador General elabora dos (2) argumentos. Sostiene que bajo las disposiciones del antes transcrito Art. 6(d) *no* existe causa de acción en daños y perjuicios contra el Estado por motivo de un "arresto ilegal" llevado a cabo por un agente o funcionario del Gobierno. En la alternativa señala que en el presente caso, inclusive, *no* se puede sostener que el arresto de los demandantes fue "ilegal" por razón de que el mismo fue llevado a cabo en cumplimiento de "una orden de arresto, válidamente expedida" por tribunal competente. Alegato del Procurador General, pág. 8. Por último, señala el Procurador General que a su juicio "el Estado Libre Asociado ha actuado, en todo momento, en cumplimiento de su deber legal, emplea[n]do la diligencia de un buen padre de familia durante el proceso de investigación y radicación de cargos penales contra los aquí recurrentes". Íd., pág. 9.

De entrada, debe quedar meridianamente claro que no estamos pasando juicio en estos momentos sobre si la actuación del Secretario de Justicia, del Fiscal Acevedo Padilla y demás funcionarios del Departamento de Justicia de Puerto Rico que intervinieron en la investigación de la querella presentada por la señora Rivera Rodríguez, fue o no, en palabras del Procurador General, "una diligente y la de un buen padre de familia" o, por el contrario, una permeada de negligencia. *Ello es una determinación que un tribunal de justicia únicamente puede realizar luego de la celebración de un juicio plenario.*

En este momento, y al igual que el tribunal de instancia, estamos ante una *moción de desestimación* radicada por una parte demandada. Ello nos obliga, conforme norma jurisprudencial al efecto, a dar por ciertas y buenas todas la alegaciones de la demanda presentada (*Ramos v. Marrero,* 116 D.P.R. 357, 369 (1985); *First Fed. Savs. v. Asoc. de Condómines,* 114 D.P.R. 426 (1983)) y a considerar, de la manera más favorable

a la parte demandante, las alegaciones contenidas en dicha demanda. *Candal v. CT Radiology Office, Inc.*, 112 D.P.R. 227, 231 (1982).

En segundo lugar, ya en cuanto al argumento del Procurador General a los efectos de que la parte demandante carece de causa de acción en virtud de lo dispuesto por el citado Art. 6(d) de la Ley de Pleitos procede que se enfatice que dicho argumento es totalmente carente de méritos; de hecho, sorprende que el mencionado funcionario insista en el mismo. En *Alberio Quiñones v. E.L.A.*, 90 D.P.R. 812, 815–816 (1964), expresamos:

En el caso de *Meléndez v. E.L.A.*, 81 D.P.R. 824 (Pérez Pimentel) (1960) cita precisa a las págs. 827–829 con relación al inciso (d) de la Sec. 6 de la Ley Núm. 104, *supra,* se estableció una bien meditada norma de interpretación de dichas excepciones: "A nuestro juicio no fue la intención de la Legislatura, al aprobar el indicado inciso (d) mantener la inmunidad del Estado contra reclamaciones de los daños ocasionados por los actos descuidados y negligentes de sus funcionarios, agentes o empleados. M[á]s bien lo que quiso hacer fue conservar la inmunidad del Estado contra litigios originados por aquellos actos torticeros cometidos deliberada o intencionalmente por sus funcionarios, agentes o empleados".

Es, casualmente, en el descubrimiento de esta intencionalidad, esta conducta subrepticia, so color de autoridad, en que debe inspirarse el refinamiento judicial. Véase además, *Miguel* v. *Hernaiz Targa & Co.*, 51 D.P.R. 585 (Travieso) (1937) cita precisa a la pág. 592, cuya decisión concede una causa de acción a toda persona sujeta a un arresto o registro ilegal. No creemos que en el estado actual de nuestra Ley y nuestra jurisprudencia se pueda hacer una válida distinción entre la responsabilidad de una persona particular y el Estado cuando se trata de un daño causado por negligencia: *Montes* v. *Fondo del Seguro del Estado,* 87 D.P.R. 199 (Dávila) (1963) cita precisa a la pág. 208.

En cuanto al segundo argumento del Estado, esto es, que el arresto efectuado no puede ser considerado como ilegal por haber sido ordenado el mismo por tribunal competente, procede que se destaque el hecho de que —conforme surge del párrafo núm. 2 de la demanda radicada, al cual hiciéramos referencia en la relación de hechos— la parte demandante *no* reclama los daños y perjui-

cios sufridos por ellos como consecuencia del arresto, legal o ilegal, que se llevara a cabo. La posición de la parte demandante, conforme surge del mencionado párrafo 2 de la demanda, es a los efectos de que la conducta o actuación deficiente y negligente de los funcionarios del Departamento de Justicia —*consistente en no corroborar la versión brindada por la señora Rivera Rodríguez y/o al no investigar adecuada y responsablemente la querella*— causó que ellos fueran acusados, arrestados, encarcelados y extraditados por unos delitos que ellos no habían cometido. En otras palabras, no se cuestiona como tal el arresto debido a que el arresto efectuado no es la "causa u origen" de los daños reclamados. El arresto y la encarcelación sufrida forman parte de los daños que se reclaman.

Esta posición que sostiene la parte demandante —*la cual, repetimos, le imputa responsabilidad al Estado por la conducta alegadamente negligente en el desempeño de sus deberes oficiales de parte del Secretario y fiscales del Departamento de Justicia*— nos obliga a discutir si a estos funcionarios le cobija un manto de inmunidad mientras actúan en el desempeño oficial de su cargo. En la alternativa de que contestemos dicha interrogante en la afirmativa, debemos contestar si, ello no obstante, el Estado responde por dicha actuación negligente.

IV

Al igual que en relación a tantas otras normas o doctrinas jurídicas, la consideración y adopción del principio de inmunidad de los representantes del Ministerio Público plantea una problemática de balance apropiado de intereses sociales adversos. En general, véase *Civil Actions Against State Government, its Divisions, Agencies and Officers*, Colorado, Shepard's/McGraw-Hill, 1982, Sec. 6.25–6.36; *Davis, Administrative Law Treatise* Sec. 27.18–27.22 (3era ed. 1984); W.P. Keeton, *Prosser and Keeton on Torts*, 5ta ed., Minnesota, West Publishing Co., 1984, Sec. 132, págs. 1057–1069; *Inmunity of Prosecuting Attorney from Action for False Arrest or Imprisonment*, 79

A.L.R. 3rd 882. En esencia, se trata de lograr un balance entre el derecho a ser compensado que tiene el ciudadano que resulta perjudicado por la actuación culposa o negligente de otra persona y el interés social, más amplio, de permitir que los representantes del Ministerio Público actúen sin miedo y de forma vigorosa en la investigación, instrucción y procesamiento de causas criminales.

En el derecho común las consideraciones subyacentes en relación con el principio de inmunidad judicial son a su vez la base sobre la cual descansa este tipo de inmunidad. Se teme que al exponer al Ministerio Público a demandas civiles, constantes e infundadas, se desvíe la atención y energía de los fiscales de sus responsabilidades de investigación y enjuiciamiento. Se entiende que la "independencia y ferocidad" con que la ciudadanía espera se ejerzan estas funciones se verían afectadas. *Imbler v. Pachtman,* 424 U.S. 409, 422–423 (1976); véanse, además: *Pearson v. Reed,* 44 P.2d 592, 597 (1935); *Yaselli v. Goff,* 12 F.2d 396, 404–406 (1926). En *Imbler v. Pachtman,* supra,[6] el Tribunal Supremo federal determinó que al amparo de la Sec. 1983 de la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983, un fiscal posee la misma inmunidad absoluta contra reclamaciones civiles que la reconocida tradicionalmente en el derecho común. El Tribunal expresó que bajo la norma de inmunidad absoluta se le puede denegar un remedio civil en daños a todo aquel acusado que genuinamente ha sido privado de su libertad, como consecuencia de las actuaciones maliciosas y deshonestas de un fiscal. *Imbler v. Pachtman,* supra, pág. 427.

■ *En Puerto Rico no existe legislación específica que reglamente el concepto de inmunidad especial del Ministerio Público. Tampoco ha habido jurisprudencia al respecto. Nos*

---

(6) Imbler fue hallado culpable de asesinato en primer grado y sentenciado a muerte por una corte estatal. Posteriormente la sentencia fue reducida a cadena perpetua. Luego de cumplir nueve años en prisión fue excarcelado debido a "la utilización culposa de testimonio falso". Imbler demandó entonces por daños al fiscal a cargo del proceso, Pachtman, alegando que el testimonio falso con el que se obtuvo su convicción fue presentado "intencionalmente y en otras ocasiones como resultado de la negligencia de Pachtman".

*corresponde hoy determinar su existencia y aclarar su aplicación, contornos y alcance.*

■ Desde el punto de vista doctrinal, la inmunidad especial de los fiscales se deriva y está íntimamente relacionada con la inmunidad judicial, es decir, a la inmunidad que cobija las actuaciones de los jueces. De ahí que en el derecho común y en el foro federal se califique como una manifestación o forma de "inmunidad cuasi-judicial". *Imbler v. Pachtman,* supra, pág. 420. Véanse, además: *Tyler v. Witkowski,* 511 F.2d 449, 450 (1975); *Kostal v. Stoner,* 292 F.2d 492, 493, *cert.* denegado, 369 U.S. 868 (1962); *Hampton v. City of Chicago, Cook County, Illinois,* 484 F.2d 602, *cert.* denegado, 415 U.S. 917 (1974); *Turpen v. Booth,* 56 Cal. 65, 69 (1880); *Watts v. Gerking,* 228 P. 135, 138 (1924); *Civil Actions Against State Government, its Divisions, Agencies and Officers,* supra., Sec. 6.26; Davis, *supra,* Sec. 27.19. Como señaláramos anteriormente, las consideraciones que dan margen al establecimiento de la doctrina de inmunidad de un fiscal son idénticas a las que justifican la inmunidad judicial. Coincidimos plenamente. En consecuencia, resulta ser de particular importancia el análisis y los señalamientos que expusiéramos en *Feliciano Rosado v. Matos, Jr.,* 110 D.P.R. 550 (1981), al incorporar a nuestro ordenamiento la doctrina de inmunidad judicial condicionada.

*Feliciano Rosado v. Matos, Jr.,* supra, no sólo traza históricamente la naturaleza y el entronque civilista de la norma de responsabilidad judicial vigente en Puerto Rico sino que nos obliga a enmarcar nuestro análisis, inicialmente, dentro de la norma general de daños del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. *Feliciano Rosado v. Matos, Jr.,* supra, págs. 559–565. A tales efectos, allí expresamos que la "[a]usencia de regulación específica sólo tiene el efecto de remitir toda controversia sobre responsabilidad judicial a la norma general de daños contenida en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141". Íd., pág. 565. En consecuencia, de acuerdo con este caso "[n]o existe impedimento alguno para que este Tribunal reconozca y configure

jurisprudencialmente una norma ·adecuada de responsabilidad para este supuesto" (íd.); o sea, para la posible responsabilidad civil del Ministerio Fiscal.

█ La actuación del Ministerio Público que con más·frecuencia puede ocasionar la radicación de acciones civiles por daños es la de iniciar y defender "con pasión" el interés del Pueblo en un proceso penal. *Imbler v. Pachtman,* supra, pág. 421. Desproveer a los fiscales de una barrera efectiva contra tales reclamaciones podría tener consecuencias funestas para nuestro sistema de justicia criminal. Para el Fiscal cada causa en que él participe como tal podría constituir fuente de responsabilidad civil. Sin duda, esa inaceptable situación provocaría la radicación de numerosas acciones en su contra, pues es habitual que los imputados y acusados de delitos enfilen hacia el Fiscal su resentimiento por haber sido procesados. La aprehensión e inquietud constante, en que vivirían y trabajarían estos funcionarios, privaría a la sociedad de la política de imparcialidad e independencia que debe caracterizar las actuaciones del Ministerio Público. Sabido es que un fiscal constantemente se ve obligado a tomar decisiones bajo serias limitaciones de tiempo e información, ello debido a la fuerte carga de trabajo que tiene.[7] Véase *Imbler v. Pachtman,* supra.

█ Resolvemos, en consecuencia, que consideraciones de. política pública hacen necesario que los representantes del Ministerio Fiscal gocen de la misma inmunidad condicionada que le concedimos a los miembros de la Judicatura mediante la decisión que emitiéramos en *Feliciano Rosado v. Matos, Jr.,* supra.[8] Resolvemos, en adición, que igual protección debe cobijar al Secretario de Justicia en todas las actuaciones en que, lejos·de

---

[7]   Un vistazo al Informe Anual del Tribunal General de Justicia correspondiente al año 1986–1987, refleja que del año 1982 al 1987 se presentaron en promedio 25,379 casos criminales anualmente en las distintas Salas del Tribunal Superior y 41,338 ante las Salas del Tribunal de Distrito.

[8]   La inmunidad que hoy concedemos a los representantes del Ministerio Público no se extiende a actuaciones impropias, inmorales o corruptas y cualquier otra conducta expresamente prohibida por el Art. 5 de la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. sec. 93a), la cual constituye causa para la suspensión o destitución de los fiscales.   ·

ejecutar una acción puramente administrativa propia del cargo que ocupa, éste interviene y se desempeña como cualquier otro fiscal en la investigación, radicación y procesamiento de causas criminales. No puede perderse de vista que, usualmente, "la comparecencia y representación del Estado recae sobre el Secretario de Justicia. Éste directamente, o a través de sus fiscales, *tiene la misión y representación del Estado en todos los casos criminales*". (Énfasis suplido.) *Pueblo v. González Malavé*, 116 D.P.R. 578, 584 (1985). Véanse: *Pueblo v. Pérez Casillas*, 117 D.P.R. 380, 385 (1986); 3 L.P.R.A. sec. 72.(9)

Ello no obstante —al igual que resolvimos en *Feliciano Rosado v. Matos, Jr.*, supra, respecto a los miembros de la Judicatura— "en aras de proteger el interés social en un adecuado funcionamiento de los tribunales", no es necesario ampliar el ámbito de la inmunidad del Ministerio Público para incluir las actuaciones dolosas, fraudulentas, maliciosas o delictivas en que puedan incurrir los fiscales, y el Secretario de Justicia, en la radicación y procesamiento de causas criminales. En el amplio ámbito del Art. 1802 del Código Civil, *supra,* pueden conciliarse los intereses sociales en conflicto: el interés de compensar aquel ciudadano que genuinamente ha sufrido un daño y el interés de permitirle al Ministerio Público vindicar enérgicamente los agravios que padece la sociedad sin refrendar actuaciones corruptas. Por ende, no adoptamos la norma de inmunidad absoluta del ministerio público predicada por el derecho común y

---

(9) El Art. 64 del Código Político, 3 L.P.R.A. sec. 72, lee en parte:

"*El Secretario de Justicia representará al Estado Libre Asociado de Puerto Rico, bien personalmente*, o por medio de sus auxiliares o *cualquiera de los Fiscales*, en todas las demandas y *procesos* civiles o *criminales*, en que fuere parte; y cuando fuere requerido por el Gobernador o por cualquier Jefe de Departamento podrá representar también, ante cualquier Tribunal, a cualquier funcionario, empleado o agente del Gobierno Estadual que demandare o fuere demandado en su capacidad oficial; *Disponiéndose, sin embargo, que los procesos criminales, excepto como queda establecido en la sec. 82 de este título, serán promovidos por el Fiscal correspondiente, sin especial autorización del Secretario de Justicia; pero en todos estos casos el Secretario de Justicia podrá intervenir en interés del público.*" (Énfasis suplido.)

adoptada en el foro federal. Bajo nuestro ordenamiento jurídico a nadie se le permite abusar de un derecho o actuar contrario a la ley. Los fiscales y el Secretario de Justicia no son la excepción. *Feliciano Rosado v. Matos, Jr.,* supra, pág. 566; *Soriano Tavárez v. Rivera Anaya,* 108 D.P.R. 663 (1979).

*Aclarado este punto, resta considerar si aun ante el manto de inmunidad que cobija las actuaciones del Secretario de Justicia y de los fiscales, el Estado responde por la alegada negligencia de éstos.* De entrada, sólo parece existir una traba para hallar responsable al Estado en este tipo de situación: la relación existente entre la inmunidad condicionada del Ministerio Público y la doctrina de inmunidad del Estado prevaleciente en Puerto Rico. Véase *Civil Actions Against State Government, its Divisions, Agencies and Officers, op. cit.,* Sec. 6.3, pág. 231. En específico, debemos examinar los efectos, si alguno, de esta relación a la luz de las disposiciones de la Ley Núm. 104 de 29 de junio de 1955, Ley de Pleitos, 32 L.P.R.A. sec. 3077 *et seq.,* mediante la cual el Estado consintió a ser demandado en daños por las actuaciones culposas o negligentes de sus empleados en el descargo de sus funciones.

La inmunidad de un funcionario público contra la responsabilidad civil que pueda generar su conducta en el desempeño de sus deberes oficiales es una inmunidad separada y distinta a la inmunidad del Estado. *Smith v. Cooper,* 475 P.2d 79 (1970); *Donahue v. Bowers,* 526 P.2d 616 (1974); *Lister v. Bd. of Regents of Uni. Wisc. System,* 240 N.W.2d 610 (1976); *Yotvat v. Roth,* 290 N.W.2d 524 (1980). Al amparo de la doctrina de inmunidad del soberano, el Estado no puede ser demandado en sus propios tribunales, ni en otros, sin su consentimiento o permiso. Tradicionalmente la jurisprudencia de todos los países con sistemas de derecho desarrollados ha catalogado la inmunidad del Estado contra demandas como un principio jurídico establecido. Actualmente, no obstante, la doctrina sufre de una gran

erosión.(10) Las razones sobre las que descansa la inmunidad del soberano han sido objeto de mucho debate. Varían desde el axioma monárquico de *The King can do no wrong*, hasta la justificación económica de proteger los recursos monetarios del Estado. De todas formas, lo importante es reconocer que la inmunidad del soberano tan sólo protege al Estado como cuerpo político, esto es, protege al Gobierno mismo de responsabilidad.

De otro lado, la inmunidad de los funcionarios públicos, y en este caso la inmunidad condicionada de los fiscales y del Secretario de Justicia, no se deriva de la mencionada inmunidad del soberano. Por el contrario, como vimos, se funda en consideraciones de política pública. *Lister v. Bd. of Regents of Univ. Wisc. System*, supra. En ese sentido, la inmunidad de los funcionarios públicos opera como una limitación sustantiva de la responsabilidad personal por daños en que puedan incurrir dichos funcionarios en el descargo de sus deberes y responsabilidades oficiales. *Civil Actions Against State Government, its Divisions, Agencies and Officers, op. cit.*, Sec. 6.3, pág. 231.

En resumen, *la inmunidad de un funcionario público no es una extensión ni tampoco es parte de la inmunidad del Estado*. Mientras que la doctrina de inmunidad del Estado opera como una limitación de responsabilidad civil respecto a la entidad gubernamental como cuerpo político, las normas de inmunidad condicionada de los funcionarios públicos operan como una limitación de la responsabilidad civil personal de dichos funcionarios. *Por ello, la concesión de inmunidad personal a un funcionario público no tiene efecto alguno sobre la renuncia del Estado a su inmunidad contra demandas por los daños que ocasionen los actos culposos o negligentes de sus empleados.* Dicho concepto no es nuevo. A igual conclusión llegamos en *Vázquez Negrón v. E.L.A.*, 113 D.P.R. 148 (1982), al interpretar el

---

(10) Para un análisis histórico de esta doctrina y de su estado actual, tanto en el Derecho Civil como en el Derecho Anglosajón, véase la opinión disidente en parte y concurrente en parte del Juez Rigau en *Galarza Soto v. E.L.A.*, 109 D.P.R. 179, 183 (1979).

efecto del Art. 41.050 de la Ley de Responsabilidad Profesional Médico-Hospitalaria, 26 L.P.R.A. sec. 4105,[11] sobre el esquema de responsabilidad del Estado y del empleado público, estatuido en la citada Ley de Pleitos.

A tales efectos, señalamos en *Vázquez Negrón v. E.L.A.*, supra, pág. 151, que el Art. 41.050 de la Ley sobre Responsabilidad Profesional Médico-Hospitalaria, *supra*, "reconoce inmunidad plena e incondicional a los profesionales en el cuidado de la salud, que, al ocasionar un daño por su culpa o negligencia, se hallaren en el curso de su empleo con el Estado". Sin embargo, advertimos que si bien "[e]sta disposición especial alteró significativamente el esquema de responsabilidad del Estado y el empleado público, estatuido en la Ley de Pleitos contra el Estado", íd., pág. 150, ciertamente, su único efecto fue que "[e]n estas circunstancias el Gobierno ha asumido toda la responsabilidad que generen los actos culposos o negligentes de estos empleados, librándolos de este modo de todas las vicisitudes que supone una reclamación civil por daños en su contra y ha dispuesto como remedio exclusivo del perjudicado la acción en daños contra el Estado". Íd., pág. 151.

Y es que siendo dos tipos distintos y separados de inmunidad, la concesión de inmunidad a un funcionario del Estado por consideraciones de política pública, sólo tiene el efecto de eximir de responsabilidad civil a dicho funcionario en su carácter individual; dejando intacta la responsabilidad y la renuncia del Estado a su inmunidad contra "acciones por daños y perjuicios a la persona . . . causados por [la] acción u omisión de cualquier[a de sus] funcionario[s], agente[s] o empleado[s] o cualquier otra

---

(11) En *Vázquez Negrón v. E.L.A.*, 113 D.P.R. 148 (1982), se trataba del Art. 41.080, equivalente anterior del Art. 41.050 de la hoy vigente Ley sobre Responsabilidad Profesional Médico-Hospitalaria, el cual en su parte pertinente reza:

"Ningún profesional de servicios de salud podrá ser incluido como parte demandada en una acción civil de reclamación de daños por culpa o negligencia por impericia profesional (*malpractice*) que cause en el desempeño de su profesión mientras dicho profesional de servicios de salud actúe en cumplimiento de sus deberes y funciones como empleado del Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades y municipios." 26 L.P.R.A. sec. 4150.

persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia". Art. 2(a) de la Ley de Pleitos, *supra*, 32 L.P.R.A. sec. 3077(a). *En otras palabras, en estos casos queda como remedio exclusivo del perjudicado la acción en daños contra el Estado.*

La posición que hoy asumimos resulta acorde con el cambio introducido por la misma Ley de Pleitos en el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142, ordenando que la obligación de reparar el daño causado por acción u omisión, mediando culpa o negligencia, es exigible no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se deba responder, y estableciendo en adición, que "[e]l Estado es responsable en este concepto en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular". *Ramos Rivera v. E.L.A.*, 90 D.P.R. 817 (1964); *Valentín v. Jaime*, 86 D.P.R. 774, 775 (1962).

## V

Por los fundamentos antes expuestos, *se dictará sentencia revocatoria de la emitida por el Tribunal Superior de Puerto Rico, Sala de Utuado, devolviéndose el caso a dicho foro para la continuación de procedimientos ulteriores consistentes con lo aquí resuelto.*