EL PUEBLO DE PUERTO RICO, peticionario, *v.* GUILLERMO CABRERA GONZÁLEZ, recurrido.

*Número:* CE-91-390          *Resuelto:* 30 de junio de 1992

*Eduardo Villanueva Muñoz*, abogado del recurrido; *Jorge E. Pérez Díaz, Procurador General*, abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La inexistencia de causa probable para el arresto en dos (2) ocasiones por Juez Municipal y Juez de Distrito, respectivamente, bajo la Regla 6(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, ¿impide al Ministerio Fiscal presentar por tercera vez el asunto al Tribunal Superior?

Expongamos sucintamente la cronología fáctica y procesal que origina esta interrogante.

## I

El 19 de abril de 1991 se presentó una denuncia contra Guillermo Cabrera González por infracción al Art. 15 de la Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec. 3214). Un Juez Municipal no encontró causa probable para arresto. Así las cosas, el Ministerio Fiscal procedió a presentarla a un Juez del Tribunal de Distrito. Nuevamente, por segunda vez, la determinación fue de *no* causa probable. Aún así, basado en un análisis literal de la Regla 6(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y en su peculiar interpretación del caso *Pueblo v. Pérez Suárez*, 116 D.P.R. 807 (1986), el Ministerio Fiscal por *tercera* vez sometió el asunto ante el Tribunal Superior. Dicho foro (Hon. Leticia Espada Roldán, Juez) dictaminó que no procedía su intervención.

A solicitud del Procurador General, revisamos.

## II

Sabido es que frente a una determinación de inexistencia de causa probable o de causa por un delito inferior, la Regla 6(c) de Procedimiento Criminal, *supra*, expresamente autoriza "someter el asunto nuevamente con la misma o con otra prueba a un magistrado de categoría superior del Tribunal de Primera Instancia".[1]

Este texto, aunque parco, es revelador. *Primero*, con re-

---

[1] Debe recordarse que una determinación en la afirmativa simplemente significa que existe o hay una base razonable para creer que se cometió un delito por la persona a ser arrestada.

La determinación original no es producto de un proceso adversativo total, y sí de una vista inicial en la que el magistrado examina la denuncia, interroga a uno o más testigos y, en el ejercicio de su discreción, se convence de que existe causa probable. 1 *Wharton's Criminal Procedure* Secs. 1-205 (1989).

De más está decir que el *quantum* de la prueba no es el necesario para sostener una convicción más allá de duda razonable. S.H. Kadish y S.J. Schulhafer, *Criminal Law and its Processes, Cases and Materials*, 5ta ed., Boston, Ed. Little Brown and Co., 1989, Cap. 1, pág. 9.

ferencia al trámite en revisión —"someter el asunto nuevamente"— está concebido en término singular. *Segundo,* visualiza que sea ante un magistrado de superior jerarquía, lo que implica que no puede ser del mismo nivel o uno menor. *Tercero,* toda esta dinámica procesal se proyecta en el "Tribunal de Primera Instancia", lo cual excluye que este Tribunal Supremo o alguno de sus miembros intervenga en esa etapa, que resulta ser *la inicial* en el encausamiento de todo caso penal.

[4–5] A base de esa cobertura, en *Álvarez v. Tribunal Superior,* 102 D.P.R. 236, 238 (1974), enfatizamos que la oportunidad concedida al Ministerio Fiscal de acudir en revisión era producto de un fino "balance racional entre los intereses del individuo y el Estado[, ] *no debe otorgar[se] a un solo funcionario la decisión única, final e irrevisable de archivar una denuncia por falta de causa probable.* La apelación, la revisión y el derecho a acudir a un foro más alto son parte principalísima de nuestro sistema de enjuiciamiento desde su incepción". (Énfasis suplido.)

Subsiguientemente, en *Pueblo v. Pérez Suárez,* supra, págs. 810–811, resolvimos que en *"ausencia de mandato legislativo en contrario* no hallamos base para privar al Estado, en el caso de los jueces municipales, *del derecho que le asiste* cuando de jueces de distrito se trata de someter el asunto de nuevo a un magistrado de categoría superior". (Énfasis suplido.)

Es evidente, pues, que nuestro ordenamiento penal permite revisar la determinación de inexistencia de causa probable para arresto de los foros Municipal a Distrito o de Distrito a Superior; este Tribunal Supremo no está autorizado a revisarlo. *Pueblo v. Tribunal Superior,* 95 D.P.R. 412, 413 (1967).

Somos conscientes de los problemas inherentes que genera ese tipo de procedimiento susceptible de ser abusado de no limitarse el número de revisiones o de no condenar la

*práctica de probar fortuna (Judge Shopping)* con jueces de igual rango hasta obtener una determinación favorable. Ello marca nuestra ruta decisoria.

■ En consecuencia, resolvemos que el Estado debe seguir rigurosamente el trámite de revisión dispuesto en la Regla 6(c) de Procedimiento Criminal, *supra*: someter el asunto a un magistrado de *categoría superior* del Tribunal de Primera Instancia significa al juez del foro que *inmediatamente* sigue en jerarquía a aquel donde se originó inicialmente la determinación, y que esa oportunidad existe una sola vez.

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López emitió un voto particular de conformidad. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

— O —

Voto particular de conformidad emitido por el Juez Asociado Señor Rebollo López.

Apoyamos, con nuestro voto de conformidad, la *correcta* norma jurisprudencial que establece hoy el Tribunal a los efectos de que, determinada inexistencia de causa probable para el arresto de una persona, *el Estado únicamente tiene una oportunidad adicional de revisar esa determinación de inexistencia de causa sometiendo nuevamente el caso*, con la misma prueba o con evidencia adicional, *ante un magistrado de categoría superior del tribunal de primera instancia.*

La antes mencionada tesis, *esto es, que nuestro ordenamiento jurídico está orientado hacia la limitación del poder del Estado para procesar criminalmente a los ciudadanos de este País en más de una ocasión*, fue sostenida, *sin éxito*,

por el Juez suscribiente en la opinión disidente que con fecha de 28 de junio de 1991 emitiéramos en *Pueblo v. Echevarría Rodríguez II*, 128 D.P.R. 752 (1991).

En aquel entonces, *en lo pertinente*, expresamos:

En lo referente a un proceso penal, al comparecer ante la Rama Judicial en representación del Poder Ejecutivo, *el Departamento [de Justicia] representa al "Estado"*, un litigante ciertamente poderoso que, de ordinario, cuenta con recursos mayores que el ciudadano común y corriente que es acusado de la supuesta comisión de un delito público. El Estado no sólo tiene a su disposición una poderosa maquinaria investigativa, sino que tiene a su alcance recursos económicos normalmente superiores a los del imputado de delito. Por otro lado, no podemos sustraernos del perjuicio que significa para uno de nuestros conciudadanos, y sus familiares, el ser acusado injustamente de la supuesta comisión de un delito público. El estigma que ello conlleva en la sociedad no se borra ni aún con la exoneración más enérgica de que sea capaz un tribunal de justicia; el perjuicio causado es uno permanente y, realmente, irreparable.

Resulta lógico y razonable, en consecuencia, que nuestro ordenamiento jurídico *le exija* al Estado que *realice*, en relación con la comisión de unos hechos delictivos, *una investigación completa, responsable y profesional*, y que, *antes de comparecer ante el foro judicial*, con el propósito de encausar criminalmente a un ciudadano en relación con esos hechos delictivos, *se asegure de que cuenta con evidencia veraz, competente y suficiente para así encausarlo*. Cf. *Romero Arroyo v. E.L.A.*, 127 D.P.R. 724 (1991). Ello, no hay duda, es la principal razón para la existencia del mandato contenido en Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 308, a los efectos de que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito"; disposición constitucional que le niega al Estado una segunda oportunidad si de primera intención comparece ante el foro judicial con una prueba "flaca o descarnada", o indigna de crédito, y el ciudadano es exonerado, después de la celebración de un juicio en los méritos, de las imputaciones que le había hecho el Estado.

En relación con esa "obligación" del Estado de comparecer ante la Rama Judicial con prueba que sea "suficiente en derecho", debe mantenerse presente que las Reglas de Procedimiento Criminal, las cuales regulan el procedimiento a llevarse a cabo en el procesamiento de un ciudadano acusado de la su-

puesta comisión de un delito público, *limitan el número de oportunidades* que tiene el Estado para encausar criminalmente a un ciudadano en juicio público, *inclusive, antes de que el asunto llegue a la etapa del juicio en su fondo.* Como sabemos, como consecuencia de las disposiciones de las Reglas 23 y 24 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *y de la jurisprudencia de este Tribunal interpretativa de las mismas,* si un magistrado del Tribunal Superior, en una vista preliminar "en alzada", confirma la determinación de no causa probable de un magistrado del Tribunal de Distrito, el Ministerio Fiscal *está impedido* de radicar acusación alguna contra ese ciudadano en nuestros tribunales de instancia. *Pueblo v. Cruz Justiniano,* 116 D.P.R. 28 (1984).

Otro vivo ejemplo de la incuestionable existencia en nuestra jurisdicción de la arraigada tendencia, o norma, *que "limita" el poder del Estado para procesar criminalmente a los ciudadanos de este País* lo constituye la decisión de vanguardia que emitiera este Tribunal hace cerca de dos (2) décadas en *Plard Fagundo v. Tribunal Superior,* 101 D.P.R. 444 (1973). *Señalando que la norma generalmente aceptada en otras jurisdicciones,* a los efectos de que es válida la celebración de posteriores procesos si el Jurado no puede ponerse de acuerdo en el primero, *se aparta del* "claro entredicho constitucional —[de] que nadie será puesto en riesgo de ser castigado dos veces por el mismo delito— y que [la referida regla general] sólo es sostenible como una necesidad", íd., pág. 451, *establecimos la norma* de que en nuestra jurisdicción *sólo podrá celebrarse un segundo, y último proceso,* contra un acusado por el mismo delito cuando el Jurado no puede ponerse de acuerdo en el primero. Esto es, si en el segundo proceso el Jurado igualmente no puede llegar a un veredicto, el Estado está *impedido* de someter al ciudadano a juicio nuevamente.

De manera pues que *no* debe haber duda en la mente de persona alguna sobre el hecho *de que nuestro ordenamiento jurídico está diseñado, u orientado, hacia la exigencia al Estado de que, al comparecer por vez primera ante el foro judicial con el propósito de encausar criminalmente a un ciudadano, el mismo viene en la obligación de asegurarse, de antemano, que la evidencia con que cuenta contra la persona que pretende encausar criminalmente es una que no sólo versa sobre todos y cada uno de los elementos del delito por el cual lo acusa sino que dicha evidencia es una veraz, confiable y satisfactoria,* esto es, "suficiente en derecho". *Pueblo v. Ortiz Morales,* 86 D.P.R. 456 (1962); *Pueblo v. Carrasquillo Carrasquillo,* 102 D.P.R. 545, 552 (1974); *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 652 (1986). Di-

cha "exigencia", u "obligación", persigue el fin último, *y óptimo*, de que el ciudadano *únicamente* sea llevado por el Estado ante el foro judicial, con el propósito de que se dilucide su inocencia o culpabilidad, *en una sola ocasión.* (Énfasis suplido y en el original, y escolio omitido.) *Pueblo v. Echevarría Rodríguez II*, supra, págs. 800–802.

Celebramos que el Tribunal, *aun cuando tardíamente*, haya adoptado y acogido la referida norma.