EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Sixto Martínez Zayas<br><br>    Recurrido | Certiorari<br><br>2013 TSPR 68<br><br>188 DPR ____ |

Número del Caso: CC-2009-0484

Fecha: 14 de junio de 2013

Tribunal de Apelaciones:
Región Judicial de: Guayama, Panel X

Oficina del Procurador General:

>          Lcda. Leticia Casalduc Rabell
>          Subprocuradora General
>
>          Lcda. Sylvia Roger Stefani
>          Procuradora General Auxiliar
>
>          Lcda. Miriam Álvarez Archilla
>          Procuradora General Auxiliar

Abogado de la Parte Recurrida:

>          Lcdo. Fermín L. Arraiza Navas

Materia: Sentencia con Opiniones de Conformidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

 Peticionario

  v.       CC-2009-484  Certiorari

Sixto Martínez Zayas

 Recurrido

## SENTENCIA

San Juan, Puerto Rico, a 14 de junio de 2013.

Atendida la *Petición de Certiorari*, confirmamos la sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió Opinión de Conformidad, a la cual se unen los Jueces Asociados señores Martínez Torres, Rivera García y Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió Opinión de Conformidad, a la cual se unen el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Kolthoff Caraballo concurre con el resultado sin opinión escrita.

       Aida Ileana Oquendo Graulau
       Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de Puerto
Rico

     Peticionario

                         CC-2009-0484     *Certiorari*

         v.

Sixto Martínez Zayas

     Recurrido

Opinión de Conformidad emitida por la Jueza Asociada señora Pabón Charneco, a la cual se unieron los Jueces Asociados señores Martínez Torres, Rivera García y Feliberti Cintrón.

En San Juan, Puerto Rico, a 14 de junio de 2013.

Estoy conforme con la Sentencia que antecede. En la situación en particular que tenemos ante nuestra consideración existe una justa causa por la cual se excusa la notificación tardía que el Sr. Martínez Zayas (en adelante Sr. Martínez Zayas o el recurrido) realizó al Estado, según lo exige la Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. sec. 3077 *et seq*. Por ende, la reclamación en el caso de autos puede continuar su curso en el foro de instancia. Ahora bien, para llegar a ese resultado no es necesario que se tenga que confeccionar una nueva excepción a la Ley Núm. 104, *supra*. Según el texto estatutario y la clara intención legislativa, no hay razón por la cual los tribunales deban enfocarse en la "realidad del confinado" para determinar si existe justa causa para la notificación tardía al Estado. Para ello solo hay

que analizar la conocida norma de que si existen circunstancias procesales atenuantes que expliquen la tardanza del demandante en notificar, ese incumplimiento no es óbice para desestimar una reclamación contra el Estado, independientemente de la identidad del demandante o sus circunstancias personales. Véase *Berríos Román v. E.L.A.,* 171 D.P.R. 549 (2007). Por eso ni la "realidad del confinado" ni su "condición de confinado" son relevantes al momento de resolver estas controversias.

Por estar conforme con el resultado que se anuncia en la Sentencia que antecede, procedo a exponer algunos apuntes sobre esta conocida norma.

## I

La inmunidad que por su propia naturaleza ostenta el ente estatal de Puerto Rico impide que este sea demandado en sus tribunales sin su consentimiento. *Porto Rico v. Rosaly*, 227 U.S. 270 (1913); *Defendini Collazo v. E.L.A., Cotto,* 134 D.P.R. 28 (1993). Precisamente a través de la Ley Núm. 104, *supra*, el Estado renunció parcialmente a su inmunidad, pero de manera **condicionada.** Una de las condiciones más conocidas, y la que atendemos en este caso, requiere que previo a presentar una Demanda el perjudicado debe notificar de forma escrita al Secretario de Justicia dentro de los noventa (90) días siguientes al momento en que tuvo conocimiento de los daños sufridos. 32 L.P.R.A. sec. 3077(a).

A través del tiempo hemos interpretado este requisito y establecimos que este "es de cumplimiento estricto [y] no alcanza el carácter de condición jurisdiccional". *Berríos Román v. E.L.A.,* supra, pág. 560. Por ende, como todo término de cumplimiento estricto, su cumplimiento puede ser tardío si media una justa causa. Véase *Cruz Parrilla v. Depto. Vivienda*, 184 D.P.R. 393, 403 (2012). Incluso existe jurisprudencia en la cual hemos eximido del cumplimiento del requisito de notificación a "situaciones en las que sus objetivos carecen de virtualidad y podrían conllevar una injusticia". *Berríos Román v. E.L.A.,* supra, pág. 560. No obstante, también hemos sido enfáticos en que ello no ha tenido el efecto de derogar el requisito estatutario y hemos reiterado su vigencia y validez. *Íd.* pág. 562.

La llamada "tendencia liberalizadora" con la que este Tribunal manejó en un momento dado las interpretaciones del requisito de notificación de la Ley Núm. 104, *supra*, ha sido criticada en diversos foros. Por ejemplo, el profesor Álvarez González ha comentado lo siguiente:

> El tratamiento jurisprudencial de este tema puede sintetizarse así: originalmente se aplicaba este requisito estrictamente a favor del Estado, pero paulatinamente se le ha ido quitando mucho del rigor a su interpretación. Inicialmente el Tribunal resolvió que, aunque no es de naturaleza jurisdiccional, este requisito sería de cumplimiento estricto, por lo que, entre otras cosas, hay que notificar al Secretario

directamente y no basta que éste se entere por otros medios. Pero muy pronto el Tribunal comenzó a aplicar la excepción de "justa causa" con gran laxitud, con lo que el supuesto "cumplimiento estricto" parecía haberse convertido en un lema sin consecuencias. J.J. Álvarez González, *Responsabilidad Civil Extracontractual*, 77 Rev. Jur. U.P.R. 603, 627 (2008).

Los días en que este Tribunal escudriñaba los hechos de un caso para encontrar razones por las que un demandante no tenía que notificar al Estado llegaron a su fin cuando decidimos el caso de *Berríos Román v. E.L.A*, supra. En este repasamos la jurisprudencia en cuanto al requisito de notificación y enfáticamente "reiteramos que, como condición previa para presentar una demanda contra el Estado al amparo de la Ley Núm. 104, todo reclamante debe cumplir con el requisito de notificación". *Íd.* págs. 562-563. Por ende, "[s]ólo en aquellas circunstancias en las que por justa causa la exigencia de notificación desvirtúe los propósitos de la Ley Núm. 104, se podrá eximir al reclamante de notificar al Estado para evitar la aplicación extrema y desmedida de dicha exigencia". *Íd.*[1]

## II

En la Opinión de Conformidad que hoy emite el Juez Asociado señor Estrella Martínez se propone que

---

[1] Al analizar nuestra decisión en ese caso, el profesor Álvarez González comenta que "[e]ste caso demuestra que, como una vez sentenció Mark Twain de forma autobiográfica, los informes sobre la muerte del requisito de notificación eran muy exagerados. El abogado competente siempre cumplirá con este requisito y sólo se refugiará en la excepción de "justa causa" cuando el cliente le llegue tarde o provenga de la oficina de un abogado menos competente". J.J. Álvarez González, *Responsabilidad Civil Extracontractual*, 77 Rev. Jur. U.P.R. 603, 628 (2008).

los tribunales deben **enfocarse en la <u>condición de</u> <u>confinado</u> del recurrido para encontrar la justa causa para la notificación tardía que este realizó**. Según este, "[l]a realidad que presenta la situación de ser confinado deberá tenerse en cuenta al determinar si existe justa causa para la falta de notificación al Estado". Op. de Conformidad de ESTRELLA MARTÍNEZ, J. pág. 18. Difiero de ese raciocinio.

Como hemos visto, la condición individual de los confinados no es relevante para determinar si existe justa causa para la notificación tardía ya que la Ley Núm. 104, *supra*, no contempla que sus disposiciones sean aplicadas de manera distinta a los ciudadanos de acuerdo a su realidad social. Debemos recordar que la Ley Núm. 104, *supra*, no es un estatuto ordinario, sino que se trata del mecanismo jurídico mediante el cual el Estado cedió parte de su inmunidad de manera **condicionada**. Los tribunales deben ser extremadamente cuidadosos al momento de analizar esas condiciones ya que están involucrados asuntos constitucionales de alta jerarquía que van a la médula misma del sistema constitucional que conocemos.

Este caso era pues, relativamente sencillo. De entrada, no estamos ante un caso en el que el demandante no notificó al Estado, sino que lo hizo de forma tardía. La justa causa para la tardanza en la notificación al Estado del Sr. Martínez Zayas se encuentra en los autos y es parte del análisis para

llegar al resultado que se anuncia en la Sentencia del Tribunal. Veamos.

Según surge del récord ante nos, la Administración de Corrección tuvo conocimiento de los hechos que generaron la Demanda del Sr. Martínez Zayas un (1) día después de ocurrido el alegado incidente. En el *Informe diario de noticias e incidentes significativos en la región* se detalla el asunto y se informa que está siendo investigado.[2] Además, en un documento titulado *Incidente con Confinado Sixto Martínez Zayas*, se detalla la investigación interna realizada por la Administración de Corrección en la que se revela que se entrevistaron varias personas, incluyendo a dos (2) oficiales correccionales y a dos (2) confinados.[3]

Esta documentación que consta en autos es suficiente para concluir que el Estado, a través de la Administración de Corrección, investigó el alegado incidente que generó la reclamación del Sr. Martínez Zayas desde muy temprano. De hecho, se entrevistaron testigos, se recopiló información y se realizó un Informe. Los propósitos que persigue la Ley Núm. 104, *supra*, fueron cumplidos por lo que razonablemente podemos concluir que hay una justa causa por razones procesales para la notificación tardía.

Vemos pues que para llegar a esa conclusión no hace falta dar énfasis a la "realidad del confinado" o

---

[2] Véase Ap. del recurso de *certiorari*, pág. 4.

[3] *Íd.* págs 1-2.

a su "condición de confinado". Sencillamente se trata de un ejercicio de razonabilidad, en el cual los tribunales deben analizar si existe una razón que amerita reconocerse como suficiente para explicar las razones por las cuales la notificación a tenor con la Ley Núm. 104, *supra*, fue realizada de forma tardía. Para ello es innecesario confeccionar unos estándares complejos que incluyan una amalgama de consideraciones que haría más difícil la labor de los tribunales de instancia al considerar casos como este. Debe recordarse que en ocasiones, un análisis sencillo nos acerca más a lo justo que uno denso y amorfo.

### III

La simplicidad en las normas legales en muchas ocasiones es una virtud. Este caso presentaba una controversia sencilla que fue resuelta de manera simple y sin confeccionar por fíat judicial una nueva excepción a la Ley Núm. 104, *supra*. Ya que en este caso existe una justa causa para la notificación tardía que realizó el Sr. Martínez Zayas, estoy conforme con la Sentencia que confirma la determinación del Tribunal de Apelaciones y del Tribunal de Primera Instancia.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Peticionario

      v.                      CC-2009-484      Certiorari

Sixto Martínez Zayas

    Recurrido

Opinión de Conformidad emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ, a la cual se unen el Juez Presidente SEÑOR HERNÁNDEZ DENTON, la Jueza Asociada SEÑORA FIOL MATTA y la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ.

San Juan, Puerto Rico, a 14 de junio de 2013.

Estoy conforme con la determinación de este Tribunal de confirmar el dictamen del Tribunal de Apelaciones, el cual decidió no intervenir con el criterio del foro de instancia de reconocer justa causa en el caso de epígrafe. Debido a la situación particular que enfrentan los confinados, considero preciso expresarme en torno al requisito de notificación previa de la Ley de Pleitos Contra el Estado, Ley Núm. 104 de 29 de junio de 1955, (Ley Núm. 104), según enmendada, 32 L.P.R.A. sec. 3077 *et seq.,* y su aplicabilidad en los casos de confinados que instan causas de acción contra el Estado.

I

El 14 de septiembre de 2006 el Sr. Sixto Martínez Zayas presentó una demanda contra el Estado Libre Asociado de Puerto Rico ("Estado"), el Secretario del Departamento de Corrección y Rehabilitación, tres oficiales de custodia de nombres desconocidos y dos funcionarios de la institución penal donde se encontraba recluido. La reclamación estaba basada en alegados hechos ocurridos el 29 de marzo de 2005, fecha en la que el señor Martínez Zayas era miembro de la población correccional y estaba bajo la custodia legal y física de la Administración de Corrección, en el Complejo Correccional de Guayama. El señor Martínez Zayas alegó en su demanda que a eso de las 3:00 a.m., mientras dormía en su celda, sintió unos fuertes golpes en su rostro. Sostuvo que se percató que éstos eran causados por una bota de tipo militar de uno de los oficiales de custodia. Arguyó que había otros dos oficiales de custodia, quienes junto al primero, comenzaron a golpearlo con los rotenes en el cuerpo, cabeza y espalda. Alegó que padecía de epilepsia y que los golpes produjeron que comenzara a convulsionar. De igual forma, sostuvo que las convulsiones fueron incrementando luego del incidente. Arguyó que después de la golpiza los oficiales lo dejaron abandonado en su celda y aplazaron la atención médica. No fue hasta las 6:00 a.m. que la enfermera encargada se percató de su condición y lo refirió al área de emergencias médicas de la institución para recibir atención. Una vez evaluado, fue referido al Centro Médico de Río Piedras.

En su demanda, arguyó que el Secretario del Departamento de Corrección y sus subalternos habían faltado a su deber de supervisar a los codemandados oficiales de custodia. También señaló que el sargento, el comandante y el teniente fueron informados de los hechos y no le ayudaron.

El emplazamiento al Estado fue realizado a través del Secretario de Justicia el 14 de septiembre de 2006, el mismo día de presentada la demanda. El resto de los emplazamientos se llevaron a cabo el 18 y 19 de septiembre del mismo año. Sin embargo, anteriormente, el 28 de noviembre de 2005, el representante legal del señor Martínez Zayas envió una carta al Secretario de Justicia en la que informó los hechos acontecidos y la reclamación en daños y perjuicios. Además, señaló que el señor Martínez Zayas estaba bajo la custodia física y legal de la Administración de Corrección. En esta misiva se informó al Estado sobre la existencia de la reclamación en contra de la Administración de Corrección y de los oficiales de custodia. Específicamente, la carta señaló que el motivo de ésta era cumplir con el Art. 2A de la Ley Núm. 104, *supra*, (32 L.P.R.A. sec. 3077 a).

El 17 de octubre de 2007, los demandados presentaron una moción en la que solicitaron la desestimación de la demanda presentada por el señor Martínez Zayas por no haberse cumplido con la notificación que requiere la Ley de Pleitos Contra el Estado dentro del término establecido para ella.

En respuesta a la solicitud presentada, el señor Martínez Zayas presentó una moción en oposición. Señaló que el Estado estuvo en todo momento bajo notificación de los hechos de la presente reclamación. Asimismo, sostuvo que él siempre estuvo bajo su custodia y eran los propios demandados quienes custodiaban sus expedientes médicos y administrativos. Arguyó que los demandados han conocido en todo momento los detalles de su condición médica. Señaló que el propósito de la notificación previa fue cumplido en su totalidad bajo los hechos y circunstancias de este caso. En consecuencia, sostuvo que la notificación se convertía en un mero formalismo que en nada hubiese cambiado las gestiones que hizo o dejó de hacer el Estado. Señaló, además, que la tardanza para notificar de forma extrajudicial era justificada. Por último, arguyó que no había probabilidad de que la prueba objetiva pudiera desaparecer.

La parte demandada presentó una réplica a la oposición en la que adujo que el señor Martínez Zayas no demostró justa causa para la tardanza en notificar. El Estado sostuvo que el señor Martínez Zayas no mostró circunstancias excepcionales que justifiquen eximirlo de notificar al Estado. En específico, el Gobierno adujo que las desventajas frente a cualquier ciudadano que presenta el señor Martínez Zayas por su condición de confinado no son razón justificada para incumplir con el requisito de notificación.

El 22 de enero de 2009 el Tribunal de Primera Instancia emitió una resolución en la cual declaró "no ha

lugar" la solicitud de desestimación. El foro primario señaló que dada la totalidad de las circunstancias y tratándose de un incidente que ocurrió dentro de una institución carcelaria controlada por el Estado, la demora en la notificación no resultó perjudicial y no justifica la desestimación de la demanda.

Inconforme, la parte demandada presentó una solicitud de reconsideración. Ésta fue declarada "no ha lugar" el 12 de marzo de 2009. Nuevamente inconforme, el Estado presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En éste señaló que el Tribunal de Primera Instancia erró al no desestimar el recurso, a pesar de que el señor Martínez Zayas no realizó una notificación dentro del término de 90 días. El foro apelativo intermedio emitió una sentencia el 13 de abril de 2009, notificada el 16 de abril de 2009, en la cual denegó el recurso.

En su sentencia, el Tribunal de Apelaciones distinguió la situación ante nos –cuando el demandante notifica fuera del término, pero antes de instar la demanda– de aquella en la cual el demandante omite notificar. El foro apelativo intermedio fundamentó su dictamen en que "no requiere mucho análisis reconocer que un confinado está ampliamente limitado en su movilidad física como para requerir igual diligencia en un trámite legal que un ciudadano en la libre comunidad". Sentencia del Tribunal de Apelaciones del 13 de abril de 2009, Ap. del recurso de *certiorari*, pág. 2. El foro apelativo intermedio sostuvo que era poco probable que el Estado haya quedado en una situación de indefensión por la notificación tardía de este caso. Por estas razones, el

Tribunal de Apelaciones decidió no intervenir con el criterio del foro de instancia de reconocer justa causa. En desacuerdo con esta determinación, el Estado presentó una moción de reconsideración ante el foro apelativo intermedio, la cual fue declarada "no ha lugar" mediante una resolución notificada el 11 de mayo de 2009.

Nuevamente inconforme, el 10 de junio de 2010 el Estado presentó un recurso de *certiorari* ante este Tribunal, en el cual señaló que el demandante no ofreció razón o justa causa para no cumplir con el requisito de notificación. En su recurso, el Gobierno sostuvo que según la jurisprudencia de este Tribunal los dos únicos supuestos que podrán mover la discreción de un tribunal lo son la incapacidad física o mental para notificar y el desconocimiento del daño sufrido. Además, adujo que la sentencia del Tribunal de Apelaciones reconoció como justa causa la naturaleza misma del confinamiento y el ambiente dentro del cual el señor Martínez Zayas se encuentra.

El 18 de febrero de 2010 expedimos. Le concedimos un término a la parte peticionaria para que presentara su alegato. La parte peticionaria nos solicitó que tomáramos su recurso de *certiorari* como su alegato, a tenor con la Regla 33 (k) de este Tribunal. Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-B R. 33 (k). Declaramos dicha moción con lugar. Por su parte, el recurrido presentó su alegato. En éste señala que la única opción disponible para notificar era en cualquier otra forma fehaciente reconocida en derecho dado que no puede usar correo certificado en la institución correccional y mucho menos efectuar una

notificación personal. Sostiene que cumplió con dicho requerimiento al utilizar el trámite administrativo. Sin embargo, alega que esta documentación nunca fue descubierta por el Estado, ni incluida en el apéndice de su petición de *certiorari*. Señala, además, que debe eximírsele del requisito de notificación debido a que el mismo, en este caso, carece de vitalidad y propósito. Sostiene que el requisito de notificación en estos casos es un rigorismo desmedido.[4]

El señor Martínez Zayas también plantea el derecho de los confinados a tener acceso a los tribunales. Sostiene que los tribunales deben desarrollar métodos para facilitar el acceso a sectores de la sociedad que, por circunstancias particulares, enfrentan múltiples obstáculos para acudir al sistema judicial, circunstancias tales como la pobreza, la marginación, la falta de instrucción y el confinamiento. Alegato de la parte recurrida, pág. 12. Expresa que los obstáculos que enfrentan los confinados para lograr un acceso efectivo a los tribunales, ameritan resolver este caso en sus méritos, y así cumplir con los fines de la justicia.

## II

La doctrina de inmunidad del soberano impide que se insten reclamaciones judiciales contra el Estado sin su consentimiento. Defendini Collazo *et al.* v. E.L.A., Cotto, 134 D.P.R. 28 (1993). Mediante la Ley Núm. 104, *supra*, el Estado renunció parcialmente a su inmunidad soberana al

---

[4]Posteriormente, el señor Martínez Zayas presentó ante nos una moción en la cual solicitó que desestimemos la petición de *certiorari*. El 15 de octubre de 2010 la declaramos "no ha lugar".

autorizar la presentación de demandas en su contra en determinadas circunstancias. Este consentimiento está condicionado por una serie de restricciones, limitaciones y salvaguardas procesales que rigen la forma en la cual un perjudicado podrá reclamar indemnización del soberano. Berríos Román v. E.L.A., 171 D.P.R. 549, 556 (2007). Entre estas limitaciones se encuentra el requisito de notificación al Secretario de Justicia como condición previa a presentar una demanda contra el Estado. Este requisito tiene su génesis en el Proyecto de la Cámara 492 de 1966, el cual posteriormente fue aprobado y se convirtió en la Ley Núm. 121 de 24 de junio de 1966, enmendando así la Ley Núm. 104, *supra*. Véase el P. de la C. 492 de 24 de junio de 1966, 5ta Asamblea Legislativa.

Específicamente, el requisito procesal impuesto en el Art. 2 de la Ley Núm. 104, *supra*, establece que toda persona que tenga reclamaciones de cualquier clase contra el Estado Libre Asociado de Puerto Rico, por daños a la persona o a la propiedad, causados por culpa o negligencia del Estado, deberá presentar al Secretario de Justicia una notificación escrita haciendo constar la fecha, el sitio, la causa y la naturaleza general del daño sufrido, los nombres y direcciones de sus testigos, y la dirección del reclamante, así como el sitio donde recibió tratamiento médico en primera instancia. (32 L.P.R.A. sec. 3077 a (a)).

La Ley Núm. 104, *supra*, requiere que la mencionada notificación al Estado se realice dentro de los 90 días de la fecha en que el reclamante tuvo conocimiento del daño. Acerca de la forma en que debe realizarse la notificación,

la referida disposición legal establece que deberá ser entregada "al Secretario de Justicia remitiéndola por correo certificado, o por diligenciamiento personal, o en cualquier otra forma fehaciente reconocida en derecho". Art. 2 de la Ley Núm. 104, 32 L.P.R.A. sec. 3077 a (b).

Al referirnos a la naturaleza del requisito de notificación al Estado, hemos reiterado que ésta es de cumplimiento estricto y no jurisdiccional. Berríos Román v. E.L.A., *supra*, pág. 560; Romero Arroyo v. E.L.A., 127 D.P.R. 724, 735 (1991); Figueroa v. E.L.A., 113 D.P.R. 327, 331 (1982); Loperana Irrizarry v. E.L.A., 106 D.P.R. 357, 359 (1977); Cortés Román v. E.L.A., 106 D.P.R. 504, 414 (1977). Esta calificación tiene el efecto de liberar al Tribunal de un automatismo. Loperana v. E.L.A., *supra*, pág. 360. A su vez, permite que el juzgador pueda "conocer del caso y proveer justicia según lo ameriten las circunstancias". Íd. El inciso (e) de la citada ley dispone que no podrá iniciarse acción judicial de clase alguna contra el Estado por daños causados por su culpa o negligencia, si no se hubiese efectuado la notificación por escrito. Sin embargo, este requisito podrá ser eximido cuando haya mediado justa causa para ello. 32 L.P.R.A. sec. 3077 a (e). De esta manera, la limitación al derecho a demandar cede cuando existe justa causa.

Además de estas instancias, la ley reconoce unas extensiones al periodo para notificar. Así, cuando se trata de menores o personas sujetas a tutela, el requisito lo debe de cumplir su tutor o la persona que ostenta la patria potestad. 32 L.P.R.A. sec. 3077 a (d). Esto no priva a que

el tutelado o custodiado realice la notificación a su propia iniciativa. Íd. De igual forma, el estatuto establece una extensión del periodo de notificación en los casos de personas mental o físicamente imposibilitadas. 32 L.P.R.A. sec. 3077 a (c). La persona imposibilitada deberá cumplir con el requisito de notificación dentro de los 30 días siguientes al cese de su imposibilidad. Íd.

Según surge del Diario de Sesiones del Proyecto de la Cámara 492, la razón que motivó el fijar un término para notificar al Secretario de Justicia fue la siguiente:

> En muchos casos y por diversas razones, las acciones se radican cuando ya está para finalizar el término y ocurre que el Estado, por el tiempo transcurrido desde que ocurrieron los alegados daños, se encuentra con problemas de falta de información o información deficiente en cuanto a los hechos y a[u]n con la circunstancia de la reorganización de una agencia o dependencia como resultado de lo cual se han extraviado los récords [sic] que hacen referencia al accidente u origen de los daños, así como con el movimiento de testigos presenciales, cuyo paradero se ignora al momento en que se notifica de la acción, todo ello en perjuicio de la oportunidad amplia que debe tener el Estado para hacer las alegaciones correspondientes y establecer las defensas en estos casos. 20 Diario de Sesiones de la Asamblea Legislativa (Cámara), P. de la C. 492, Sesión Ordinaria, 5ta Asamblea Legislativa, 18 de abril de 1966, T. 2 pág. 845.

El requisito de notificación busca que el Gobierno esté avisado de que ha surgido una probable causa de acción por daños en su contra para que así pueda investigar prontamente. Berríos Román v. E.L.A., *supra*, pág. 559; Rivera de Vicenti v. E.L.A., 108 D.P.R. 64, 69 (1978). De esta manera, el Gobierno puede activar sus recursos antes

de que desaparezcan los testigos y las pruebas objetivas.
Rivera de Vicenti v. E.L.A., *supra*.

Entre los propósitos que persigue este requisito de
notificación previa al Estado se encuentran: (1)
proporcionar a los cuerpos políticos la oportunidad de
investigar los hechos que dan origen a la reclamación; (2)
desalentar las reclamaciones infundadas; (3) propiciar un
pronto arreglo de las mismas; (4) permitir la inspección
inmediata del lugar del accidente antes de que ocurran
cambios; (5) descubrir los nombres de personas que tienen
conocimiento de los hechos y entrevistarlos mientras su
recuerdo es más confiable; (6) advertir a las autoridades
de la existencia de la reclamación para que provea la
reserva necesaria; (7) mitigar el importe de lo daños
sufridos mediante oportuna intervención ofreciendo atención
médica adecuada y proporcionando facilidades para
hospitalizar al perjudicado. Zambrana Maldonado v. E.L.A.,
129 D.P.R. 740, 755 (1992); Mangual v. Tribunal Superior,
88 D.P.R. 491, 494 (1963).

El tratamiento jurisprudencial que hemos brindado al
requisito de notificación refleja una trayectoria
liberalizadora. "En aras de hacer justicia y de imprimirle
vitalidad al propósito rector de nuestra Asamblea
Legislativa, al adoptar el requisito de notificación, nos
hemos negado a aplicar de forma inexorable" y "sin sentido
crítico el requisito de notificación a situaciones en las
que sus objetivos carecen de virtualidad y podrían
conllevar una injusticia". Berríos Román v. E.L.A., *supra*,

pág. 560; Passalacqua v. Mun. de San Juan, 116 D.P.R. 618, 629 (1985).

Como parte de esta tendencia, hemos reconocido instancias donde el requisito de notificación previa no es necesario debido a las circunstancias particulares enfrentadas. Así, no es de aplicación inexorable el requisito de notificación previa en los casos donde el riesgo de que desaparezca la prueba objetiva es mínimo, donde hay constancia efectiva de la identidad de los testigos y donde el Estado puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique. Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811, 815 (1983).[5] Ello debido a que en esas circunstancias la disposición no tiene razón de ser. Íd.

También hemos eximido del requisito en circunstancias tales como: cuando la acción se trae directamente contra la aseguradora en virtud de una póliza de seguro que cubre la responsabilidad del Estado, Cortés Román v. E.L.A., *supra*; si el perjudicado demanda y emplaza dentro del término establecido por la ley para la notificación, Passalacqua v. Mun. de San Juan, *supra*; Zambrana Maldonado v. E.L.A, *supra*. De igual forma, hemos excusado el cumplimiento del requisito cuando es demandado en daños el funcionario a quien se debe dirigir la notificación. Romero Arroyo v.

---

[5]En Meléndez Gutiérrez v. E.L.A., *supra*, un caso de impericia médica contra el Estado, los expedientes médicos estaban en posesión del Estado e incluían la información médica del perjudicado recopilada durante su tratamiento en hospitales pertenecientes al Gobierno. Al estar en manos del Estado, dicha prueba no corría riesgo de desaparecer, por lo que no aplicamos de forma inexorable el requisito de notificación previa.

E.L.A., *supra*. Véase, además, <u>Méndez *et al.* v. Alcalde de Aguadilla</u>, 151 D.P.R. 853 (2000).[6]

Varias de estas determinaciones las hemos hecho a la luz del principio de hermenéutica jurídica que establece que las condiciones limitativas del derecho de las personas a solicitar reparación deben interpretarse restrictivamente. Véanse: <u>Zambrana Maldonado v. E.L.A.</u>, *supra*, pág. 756; <u>Flores Román v. Ramos González</u>, 127 D.P.R. 601, 606 (1990); <u>Vázquez Negrón v. E.L.A.</u>, 109 D.P.R. 19, 25 (1979); <u>Insurance Co. of P.R. v. Ruiz</u>, 96 D.P.R. 175, 179 (1968).

Recientemente en <u>Berríos Román v. E.L.A.</u>, *supra*, examinamos el requisito de justa causa que exime al reclamante de cumplir con la notificación al Estado. En esa ocasión, reiteramos el requisito de que todo reclamante debe notificar al Estado antes de presentar una demanda al amparo de la Ley Núm. 104, *supra*. Esto, luego de haber reconocido la tendencia liberalizadora en cuanto al cumplimiento del mencionado requisito. Afirmamos la validez del requisito de notificación y sostuvimos que solamente podrá eximirse en circunstancias en las que existe justa causa debido a que la exigencia de la notificación desvirtúa los propósitos de la Ley Núm. 104, *supra*. Íd. De esta manera logramos evitar la

---

[6]En el caso de <u>Méndez *et al.* v. Alcalde de Aguadilla</u>, *supra*, ocupándonos de la aplicación de la Ley de Municipios Autónomos, la cual tiene un requisito de notificación análogo a la Ley de Pleitos Contra el Estado, eximimos del cumplimiento con el requisito de notificación debido a que los actos fueron efectuados por el funcionario a quien se debía dirigir la notificación. Esta norma ya había sido establecida en <u>Romero Arroyo v. E.L.A.</u>, *supra*, para los casos bajo la Ley de Pleitos Contra el Estado, Ley Núm. 104, *supra*.

aplicación extrema y desmedida del requisito, y es aplicado en circunstancias apropiadas. J.J. Álvarez González, Responsabilidad Civil Extracontractual, 77 Rev. Jur. U.P.R. 603, 627 (2008).

                                III

Examinada la jurisprudencia pertinente, estamos en posición para atender el asunto que presenta el caso ante nos acerca del requisito de notificación previa exigido en la Ley de Pleitos Contra el Estado, Ley Núm. 104, supra, y su aplicación en los casos de confinados.

En el pasado hemos expresado que el requisito de notificación presupone una persona hábil para hacerla. Véase Mangual v. Tribunal Superior, supra, pág. 497. Por esta razón, en los casos de menores el inciso (d) provee para que el padre o la madre que ejerce la patria potestad supla la falta de capacidad de éstos. 32 L.P.R.A. sec. 3077 a (d). Igual ocurre en personas sujetas a la tutela. Íd.

De este mismo principio que reconoce que el requisito de notificación implica que la persona a la que le es requerido notificar debe ser capaz de realizar la notificación, surge que la Ley Núm. 104, supra, permita que las personas física o mentalmente imposibilitadas para cumplir con el requisito puedan efectuar la notificación dentro de los 30 días siguientes al cese de su imposibilidad. 32 L.P.R.A. sec. 3077 a (c). Claramente el estatuto prevé para situaciones en las cuales una persona desea instar una acción contra el Estado, sin embargo, una imposibilidad física o mental lo limita a

realizar la notificación previa que requiere la ley. En estas circunstancias, se exime del requisito mientras perdura la imposibilidad. Íd. Una vez ésta finaliza, la persona tiene 30 días para cumplir con el requisito. Íd.

En la situación particular de los miembros de la población correccional, el Departamento de Corrección y Rehabilitación ostenta su custodia. Al estar éstos sujetos a la custodia del Estado, soy del criterio que deben tomarse en consideración las circunstancias particulares de las instituciones penales y procurar mantener justicia en cuanto a los requisitos que le son impuestos a los confinados. Ciertamente, los confinados no poseen las mismas oportunidades ni los mismos recursos para cumplir con el requisito de notificación de la Ley Núm. 104, *supra*. Veamos.

La posibilidad de los confinados de realizar la notificación requerida por el estatuto no es igual a la de los ciudadanos en la libre comunidad. Los miembros de la población correccional deben enfrentar una limitación de movilidad física, la cual afecta su habilidad para cumplir con el requisito de notificación. Además, existen estrictas medidas de seguridad que afectan todas las operaciones que son realizadas en las instituciones carcelarias; incluyendo los servicios de correspondencia de los miembros de la población correccional.

Como mencionamos, la Ley Núm. 104, *supra*, establece las formas en que la notificación podrá ser realizada. Señala específicamente en su Art. 2A que deberá realizarse mediante correo certificado, por

diligenciamiento personal o en cualquier otra forma fehaciente reconocida en derecho. Por su parte, el *Reglamento de normas para regir la correspondencia de los miembros de la población correccional en instituciones correccionales y programas de la administración de corrección*, Reglamento 7594 de 24 de octubre de 2008 (Reglamento Núm. 7594), el cual es de aplicación a todos los miembros de la población correccional, establece las normas y procedimientos de la correspondencia en las instituciones correccionales bajo la jurisdicción del Departamento de Corrección y Rehabilitación y la Administración de Corrección. Este Reglamento establece que los miembros de la población correccional no están permitidos a realizar envío de correspondencia certificada. Art. V, inciso 9, Reglamento Núm. 7594, *supra*, pág. 7. Debido a esta prohibición, y no pudiendo realizar la notificación mediante diligenciamiento personal por su reclusión, los confinados no tienen disponible dos de las formas que expresamente se establecen en el Art. 2A de la Ley Núm. 104, *supra*, para realizar la notificación. Así, los confinados solamente pueden cumplir con el requisito de notificación al Estado mediante la tercera opción que provee el articulado: "otra forma fehaciente reconocida en derecho".

Estas estrictas medidas y las limitaciones en los procesos tienen la posibilidad de causar un retraso en la tramitación de correspondencia de los confinados en comparación a los procesos que tiene a su disposición una persona en la libre comunidad. En consecuencia, la

oportuna notificación de acciones contra el Estado por parte de confinados en muchas ocasiones se ve quebrantada.

Las herramientas limitadas que poseen los confinados nos llevan a sostener que su capacidad y habilidad para realizar la notificación no debe considerarse igual a la de cualquier persona en la libre comunidad. Sería intrínsecamente injusto considerar que los miembros de la población correccional poseen la misma habilidad de un ciudadano en la libre comunidad para cumplir con el requisito de notificación previa que es requerido por la Ley de Pleitos Contra el Estado.

Hemos sido enfáticos en sostener que al analizar una disposición legal y aplicarla a una situación en particular, es importante tener en consideración el problema que pretende solucionar. Zambrana Maldonado v. E.L.A., *supra*, pág. 749; Pacheco v. Vargas, Alcaide, 120 D.P.R. 404, 409 (1988). De esta forma cumplimos con el propósito que debe tener toda norma legal, el perseguir propósitos útiles. Íd. Considero que la realidad que presenta la situación de ser confinado debe tenerse en cuenta al determinar si existe justa causa para la falta de notificación al Estado. Sin embargo, el solo hecho de ser confinado no podría ser de por sí suficiente motivo para eximir del requisito o que pueda ser considerado como una dispensa para su cumplimiento. La norma que sostenemos no es una exención automática del requisito que impone la Ley Núm. 104, *supra*. Por el contrario, las circunstancias particulares de las instituciones penales y que los confinados no poseen los mismos recursos para

cumplir con el requisito de notificación previa deben tomarse en consideración junto a la totalidad de las circunstancias y al objetivo que persigue la notificación requerida. Así, se logra que los propósitos para los cuales fue impuesto el requisito sean alcanzados.

Tal como hemos discutido, en el pasado este Tribunal ha reconocido que existen circunstancias en las cuales el requisito de notificación al Estado dispuesto en la Ley Núm. 104, *supra*, no es de riguroso cumplimiento. En ese sentido, este Tribunal ha eximido del requisito cuando existe justa causa para ello, debido a que exigir el cumplimiento con la notificación no alcanza, en la situación particular, los propósitos perseguidos por el Art. 2A de la Ley Núm. 104, *supra*. Por ello, cuando los objetivos de la notificación ya fueron alcanzados, hemos reconocido justa causa para eximir del requisito de notificación previa que dispone la Ley Núm. 104, *supra*, ya que exigir su cumplimiento constituye un mero formalismo carente de propósito.

En el caso de los confinados, el control estricto que mantiene una institución penal hace poco probable que quede el Estado en una situación de indefensión por la notificación tardía debido a que los procesos ante la Administración de Corrección requieren que se recopile información de los incidentes ocurridos. La investigación que realiza la Administración de Corrección a raíz de un incidente podría tener el efecto de notificación oportuna a estos fines. Bajo estas circunstancias, la exigencia de una posterior notificación está vacía de practicabilidad.

Esto, junto a la realidad acerca de la imposibilidad del confinado de cumplir con el requisito de la notificación de igual forma que una persona en la libre comunidad, nos lleva a no aplicar el requisito con rigurosidad desmedida.

Exigirles que notifiquen dentro de este término, cuando ya se ha realizado la notificación a la administración o cuando ya ha comenzado el proceso investigativo sería impráctico si los propósitos del estatuto fueron cumplidos. Más aun, "trasladaría una controversia justiciable a los predios de lo académico y ficticio". Véanse: Passalacqua v. Mun. de San Juan, supra, págs. 631-632; Rivera de Vicenti v. E.L.A., supra, pág. 70.

Cuando el confinado que desea presentar una causa de acción contra el Estado no se ha quedado cruzado de brazos y, dentro del término para realizar la notificación, presenta una solicitud de remedios ante la Administración de Corrección, o cuando esta agencia realiza una investigación de un incidente que luego da base a la posible causa de acción, los objetivos de la notificación podrían verse atendidos. Ello, pues, el Estado tendría acceso pleno a la información y testigos necesarios para evitar quedar en un estado de indefensión ante una potencial causa de acción.

En consecuencia, soy del criterio que en casos de reclamaciones por daños y perjuicios alegadamente causados por la culpa o negligencia del Estado, por sucesos ocurridos en la misma institución de la

Administración de Corrección que custodia al confinado demandante, puede considerarse que existe justa causa para eximir de la observancia de la notificación que requiere la Ley Núm. 104, *supra*, si, dentro del término que requiere la ley para hacer la notificación previa al soberano, se le informa esencialmente a dicho componente del Estado la misma información que debía constar en la notificación.

En estas situaciones, para eximir del cumplimiento con el requisito de notificación por justa causa debería evaluarse la naturaleza de la reclamación y su relación con la investigación realizada. Ello, para examinar si la prueba pertinente a los fines de la reclamación pudo ser descubierta. De igual forma, deberían examinarse las circunstancias que hemos considerado como eximentes, tales como la ausencia de riesgo de que desaparezca la prueba objetiva, si hay constancia efectiva de la identidad de los testigos, y si el Estado puede fácilmente investigar y corroborar los hechos alegados en la demanda que se presente.

Además, al igual que en los demás casos bajo este articulado, debería evaluarse si los propósitos de la notificación fueron cumplidos; si los cuerpos políticos han tenido oportunidad de investigar los hechos que dan origen a la reclamación; si se ha permitido la inspección inmediata del lugar del accidente antes que ocurran cambios; si se han podido descubrir nombres de personas con conocimiento de los hechos y ha habido la oportunidad de entrevistarlos mientras su recuerdo es más confiable;

y si tuvieron oportunidad de mitigar el importe de los daños sufridos mediante la oportuna intervención, al ofrecer atención médica adecuada y proporcionar facilidades para hospitalizar al perjudicado.

Concluyo lo anterior, luego de realizar un balance entre las imposibilidades que presentan los confinados de poder cumplir con este requisito y los objetivos que son perseguidos con el mismo.

IV

En el caso de epígrafe, el señor Martínez Zayas presentó una demanda contra el Estado Libre Asociado de Puerto Rico por alegados hechos ocurridos el 29 de marzo de 2005 en el Complejo Correccional de Guayama donde se encontraba confinado. Alegó que fue víctima de una agresión de manos de los propios agentes de custodia.

El 28 de noviembre de 2005, el representante legal del señor Martínez Zayas envió una carta al Secretario de Justicia en la que señaló que el señor Martínez Zayas estaba bajo la custodia física y legal de la Administración de Corrección, y le detalló los hechos acontecidos y la reclamación en daños y perjuicios. El emplazamiento al Estado fue realizado a través del Secretario de Justicia el 14 de septiembre de 2006. El Estado solicitó la desestimación de la demanda ya que alegó que el señor Martínez Zayas no había cumplido con la notificación que requiere la Ley de Pleitos Contra el Estado dentro del término de 90 días establecido. El Tribunal de Primera Instancia y el Tribunal de Apelaciones concluyeron que las circunstancias de este

caso ameritaban reconocer justa causa por la tardanza en la notificación. Sin embargo, el Estado en su recurso de *certiorari* nos señala que no hubo demostración de justa causa para cumplir con el requisito de notificación tardíamente.

Al ser el señor Martínez Zayas miembro de la población correccional y ocurrir un incidente en el que se alegan actuaciones del Estado mientras el confinado estaba bajo su custodia, el Estado tenía los medios para corroborar e investigar fácilmente los planteamientos, y así lo ha hecho en este caso. La Administración de Corrección tenía conocimiento de la fecha, sitio, causa, naturaleza del daño alegado, y nombres y direcciones de los testigos desde, al menos, el día siguiente que ocurrieron los alegados hechos.

Del expediente surge un escrito titulado *Informe diario de noticias e incidentes significativos en la región*, en el cual es descrita la situación alegada y se indica que el asunto fue sometido para posterior investigación. Ap. del recurso de *certiorari*, Anejo 3, pág. 4. Surge también del expediente un informe del 30 de marzo de 2005, dirigido al Sub Director Regional de la institución, en el cual el comandante relata el incidente del 29 de marzo de 2005 que dio base a la presentación de la causa de acción. Ap. del recurso de *certiorari*, Anejo 1, págs. 1-2. En este escrito, relató una entrevista que le realizó al señor Martínez Zayas antes de que éste fuera referido a Centro Médico. Íd. Expresó en esta carta que entrevistó al supervisor de turno y a los oficiales.

Íd. También señaló que entrevistó a los confinados ubicados en la misma sección del señor Martínez Zayas y que posteriormente radicó una querella. Íd. Además, expresó en dicha misiva que se ordenó a un agente que finalizara la investigación con el señor Martínez Zayas. Íd.

El informe descrito fue precisamente del incidente en el que se basa la causa de acción instada, por lo que la prueba descubierta guardaba total relación con la causa de acción. Según surge del expediente, en el caso ante nuestra consideración los informes realizados dieron la oportunidad de investigar los hechos que dan origen a la reclamación. En este caso estamos ante una situación donde existe constancia efectiva de la identidad de los testigos y que el Estado podía investigar con facilidad los hechos, toda vez que surgen del informe. El Estado tuvo la oportunidad de realizar una inspección inmediata del lugar del incidente antes de que ocurrieran cambios; hubo oportunidad de descubrir los nombres de personas que tenían conocimiento de los hechos y fueron entrevistados mientras su recuerdo era más confiable; además, hubo amplia oportunidad de mitigar el importe de los daños sufridos mediante la atención médica adecuada, más aun cuando el confinado estaba bajo su custodia y la Administración de Corrección tiene el control sobre la atención médica que recibe este confinado.

Además, en este caso se presenta el agravante de que fueron los propios agentes quienes alegadamente le infringieron daño corporal al confinado. Los hechos

ocurrieron en una dependencia gubernamental y los alegados causantes de los daños son precisamente funcionarios del Estado, quienes ostentan custodia del demandante.

Como vemos, el Estado, a través de la Administración de Corrección, tuvo conocimiento del incidente y recopiló evidencia. El objetivo de la notificación ya se cumplió. En estas circunstancias, la falta de notificación en el término dispuesto es una con justa causa debido a la realidad del confinado. Además, debe tenerse en consideración que habiéndose cumplido los propósitos de la notificación, la falta de ésta no afecta el derecho del demandado ya que las finalidades del articulado fueron cumplidas dentro del término.

Notoriamente, esto es una circunstancia en la cual los objetivos perseguidos por la Ley Núm. 104, *supra*, carecen de virtualidad y su exigencia estricta podría conllevar una injusticia. Berríos Román v. E.L.A., *supra*, pág. 560; Passalacqua v. Mun. de San Juan, *supra*, pág. 629. La impracticabilidad de exigir el cumplimiento del requisito en situaciones como las del caso de marras, sumado a consideraciones referentes al principio de igualdad de acceso a la justicia, hacen que el requisito de notificación previa pueda ser eximido. Debido a que sería una grave injustica privarle de su reclamación, debe excusarse su cumplimiento. Rodríguez Sosa v. Cervecería India, 106 D.P.R. 479, 485 (1977).

En vista de lo anteriormente expuesto, existe justa causa para eximir del requisito de notificación de la Ley Núm. 104, *supra*, en el término dispuesto.

V

Por todo lo antes expuesto, estoy conforme con la determinación que emite hoy este Tribunal mediante la cual confirma la sentencia emitida por el Tribunal de Apelaciones y devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.


                        Luis F. Estrella Martínez
                        Juez Asociado